UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | No. 26-mj-04234 |
| LUIS SERRANO SARMIENTO, | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER ON MOTION
FOR REVIEW OF DETENTION ORDER (DOC. NO. 18)

August 11, 2026

SOROKIN, J.

Luis Serrano Sarmiento appeals from an Order of Detention issued by Magistrate Judge Hennessy. Appeal lies to the undersigned as the emergency district judge at the time Sarmiento filed his appeal. Review is de novo. United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990); United States v. Fadanelli, No. 24-cr-10352-JEK, 2025 WL 3719654, at *3 (D. Mass. Dec. 23, 2025); cf. 18 U.S.C. § 3145(b).

The government lodged a complaint in May 2026 charging Sarmiento with "[u]nlawful reentry of [a] deported alien," a felony violation of 8 U.S.C. § 1326(a) and (b)(2). Doc. No. 1. The government seeks, and Judge Hennessy ordered, detention on risk-of-flight grounds only. See Doc. No. 20. To justify pretrial detention on this basis, the government bears the burden to prove by a preponderance of the evidence "that no condition or combination of conditions will reasonably assure the appearance of [Sarmiento] as required." 18 U.S.C. § 3142(e)(1). The government relies here on the strength of its case against Sarmiento, and the virtually inevitable consequences of a conviction. See Doc. No. 20. Sarmiento urges this Court to order his release

on the same conditions he offered before Judge Hennessey—essentially, personal recognizance augmented with reporting to Probation and a third-party custodian in the form of his current girlfriend.  See Doc. Nos. 17, 18.

The Court has considered the record in light of the factors Congress has identified as bearing on its determination in this context.  See 18 U.S.C. § 3142(g).  In this case, the consequences Sarmiento would experience following a conviction are two-fold: a likely period of incarceration, followed by certain deportation.  The Court's de novo review leads it to conclude that, as the government argues, the weight of the evidence against Sarmiento and, thus, the likelihood of conviction fall somewhere between very strong and overwhelming.  It is therefore highly probable that Sarmiento faces a prison sentence followed immediately by removal from the United States.

Sarmiento is not a citizen of the United States; he is a citizen of Honduras.  He is thirty-six years old.  He came to this country as a child, speaks fluent English, and graduated high school in 2008.  Doc. No. 18 at 4–5; Doc. No. 18-2 at 4.  Sarmiento's three sons, with whom he has good relationships, live in Massachusetts.  Doc. No. 18-2 at 4.  He has the support of members of his community at large as well as his family, many of whom have written letters on his behalf.  Doc. No. 18 at 5; Doc. No. 18-1.

In the fall of 2017, Sarmiento pled guilty in federal court to three offenses: conspiring to engage in the business of dealing firearms, conspiring to distribute cocaine base, and being a felon in possession of a firearm.  See Judgment, United States v. Serrano, No. 16-cr-10165-MLW (D. Mass. May 31, 2018), ECF No. 390.  The following spring, he was sentenced to sixty months' incarceration followed by four years of supervised release.  Id.  Thereafter, in 2021, Sarmiento was deported from this country and ordered not to return without the permission of

2

the appropriate official of the United States.  Though he has received no such permission, he has nevertheless returned.  According to the motion papers, Sarmiento failed to appear in immigration court at some unknown date.  But the record does not permit the Court to resolve whether his failure to appear was negligent, knowing, or willful (as the government contends), or arose because he was in federal custody serving a prison sentence at the relevant time (as Sarmiento suggests).  At the time he allegedly committed the pending reentry offense, Sarmiento was not on parole, probation, or supervised release. [1]

Sarmiento has strong attachments to family and community in the United States, as well as a deep connection to the United States after having spent most of his life here.  He faces as certain a conviction as anyone facing prosecution in federal court, followed inevitably by deportation upon the completion of any prison sentence.  Nothing before the Court suggests any possibility of avoiding either fate.  The combination of these circumstances creates a substantial and serious risk of flight (i.e., failure to appear by disappearance within the United States or elsewhere).

There are some counterbalancing factors.  Sarmiento proposes general supervision by Probation with his girlfriend serving as a third-party custodian.  If the former mitigates risk of flight at all, the Court finds it does so to an immaterial degree in this case.  The latter also has

---

[1] There is some suggestion in the record that he was perhaps serving a period of supervised release.  See Doc. No. 18-2 at 5–6.  This is incorrect.  Supervised release commences upon release from custody.  It is neither stayed nor paused by a defendant's deportation or civil immigration detention.  See United States v. Carrasco-Mateo, 389 F.3d 239, 247 (1st Cir. 2004); United States v. Brown, 54 F.3d 234, 237–39 (5th Cir. 1995).  Here, the period of supervised release commenced no later than March 2, 2021, see Doc. No. 1-1 ¶ 12, and expired four years later on March 2, 2025, more than a year before May 5, 2026, the date the complaint alleges Sarmiento committed the present offense, Doc. No. 1.  That he may have returned to the United States much earlier than that, during his period of supervised release, is not foreclosed by the foregoing, but there is no reliable evidence before the Court establishing that the charged offense constitutes a violation of his previously imposed term of supervised release.

limited significance, as nothing in the record suggests that Sarmiento's current girlfriend exercises the type of influence or sway over him that would reasonably assure his appearance (unlike, say, a parent might). The zealous practice of the Executive Branch arresting non-citizens arguably cuts both ways in a case such as this. It might be viewed as favoring Sarmiento's release; the increased likelihood of immigration authorities finding and arresting him again could reduce his incentive to flee. In other words, if released, Sarmiento might have some incentive to stay put, so that he can have some time with his family before he is convicted and again deported. On the other hand, it might be viewed as intensifying the risk that Sarmiento will flee, eliminating any hope he might otherwise have of avoiding criminal and immigration consequences that will exacerbate both the distance and length of his imminent separation from his family. Ultimately, the Court finds this is not a strong factor either way.

Weighing these factors persuades the Court that the government has met its burden of proof by a preponderance of the evidence. On the facts of this case, the risk of flight is substantial, and the proposed conditions do not materially reduce that risk. The Court's own review of the record does not identify additional conditions the Court could impose that would materially change its weighing of the relevant factors. Sarmiento's motion urging this Court to release him (Doc. No. 18) is therefore DENIED.[2]

These circumstances are sad for the defendant and his family. Sarmiento's status as a noncitizen combined with his criminal record means the law bars him from living in the country

---

[2] Even if the Court were to order release, Sarmiento would not actually be released to live at home. Rather, upon the United States Marshals Service releasing him from the custody derived from his pending criminal prosecution, Sarmiento would be taken into civil immigration custody by ICE, acting on the immigration detainer lodged against him presently. The Court understands that his deportation would then proceed, meaning that the United States Attorney's Office would likely have to dismiss this prosecution for its inability to produce Sarmiento in this Court.

where he has spent the vast majority of his life, and thus prevents him from participating in the lives of his three children—United States citizens aged seventeen, thirteen, and ten—as they continue to grow here.[3]

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[3] There is no suggestion that Sarmiento has a basis to adjust his status, due to his family connections to three birthright citizens, to permit him to remain in the United States.